Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOMA NEIL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>TRUE RELIGION APPAREL, INC. and TRUE RELIGION SALES, LLC,<br><br>*Defendants.* | Case No. 2:25-cv-10909<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

1

**Table of Contents**

2    I.    Introduction..............................................................................1

3    II.   Parties....................................................................................3

4    III.  Jurisdiction and Venue. ...........................................................4

5    IV.  Facts. ...................................................................................4

6          A.    Defendants' fake sales and discounts.........................................4

7          B.    Defendants' purported regular prices were not the prevailing prices

8               during the 90 days immediately preceding Defendants'

9               advertisement of the purported discounts. ..............................15

10         C.    Defendants' advertisements are unfair, deceptive, and unlawful. ...........18

11         D.    Defendants' advertisements harm consumers..........................................20

12          E.    Plaintiff was misled by Defendants' misrepresentations. .......................21

13         F.    Defendants breached their contracts with and warranties to

14               Plaintiff and the putative Class..............................................25

15          G.    No adequate remedy at law. .................................................26

16    V.   Class Action Allegations. .......................................................27

17    VI.  Claims. ...............................................................................29

18         First Cause of Action: Violation of California's False Advertising Law ..........29

19         Second Cause of Action: Violation of California's Consumer Legal

20               Remedies Act ....................................................................31

21         Third Cause of Action: Violation of California's Unfair Competition Law......33

22         Fourth Cause of Action: Breach of Contract........................................35

23         Fifth Cause of Action: Breach of Express Warranty...............................37

24         Sixth Cause of Action: Quasi-Contract/Unjust Enrichment..............................38

25         Seventh Cause of Action: Negligent Misrepresentation ...................................38

26         Eighth Cause of Action: Intentional Misrepresentation ....................................40

27    VII.  Relief...................................................................................41

28

Class Action Complaint          i          Case No. 2:25-cv-10909

# I.    Introduction.

1.    Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6.    Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7.      As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendants True Religion Apparel, Inc. and True Religion Sales, LLC ("Defendants" or "True Religion") manufacture, market, and sell clothing and accessories ("True Religion Products" or "Products") online through the True Religion website, www.truereligion.com.

9.      On its website, True Religion lists purported regular prices and advertises purported limited-time sales offering steep discounts from those listed regular prices. Defendants almost always promote percentages off with a constant stream of promotions. Here are some examples:



10.      Far from being time-limited, the discounts on True Religion Products are almost always available. As a result, everything about True Religion's price and purported discount advertising is false. The list prices True Religion advertises are not actually its regular prices, because True Religion's Products are regularly available for less than that. The purported discounts True Religion advertises are not the true

discounts the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited in time—quite the opposite, they are consistently available.

11.     As described in greater detail below, after reviewing True Religion's website, www.truereligion.com, and seeing and relying on advertised sales, Plaintiff Nichoma Neil bought Products from True Religion's website, www.truereligion.com. When Plaintiff made her purchases, True Religion advertised that a purported sale was going on, and Plaintiff believed that she was being offered steep discounts from the purported regular prices that True Religion advertised. And based on True Religion's representations, Plaintiff believed that she was purchasing Products whose regular prices and market values were the purported list prices that True Religion advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendants.

12.     The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendants advertised were not the true regular prices at which Defendants usually sell the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendants been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

13.     Plaintiff brings this case for herself and other customers who purchased True Religion Products from Defendants.

## II.     Parties.

14.     Plaintiff Nichoma Neil is domiciled in Los Angeles, California.

15.     The proposed Class includes citizens of California.

16.     Defendant True Religion Apparel, Inc. is a Delaware corporation with its principal place of business in Gardena, California. It is a citizen of Delaware and California. Defendant True Religion Sales, LLC is a Delaware limited liability

Class Action Complaint                    3                    Case No. 2:25-cv-10909

company with its principal place of business in Gardena, California. It is a citizen of Delaware and California. *See* 28 U.S.C. § 1332(d)(10) (in a class action "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

## III.  Jurisdiction and Venue.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendants.

18.     The Court has personal jurisdiction over Defendants because Defendants sold True Religion Products to consumers in California, including to Plaintiff.

19.     Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendants are subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold True Religion Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sales to Plaintiff.

## IV.  Facts.

### A.  Defendants' fake sales and discounts.

20.     Defendants manufacture, distribute, market, and sell clothing and accessories. True Religion sells its Products directly to consumers, including through its website, www.truereligion.com.

21.     On its website, True Religion creates the false impression that its Products' regular prices are higher than they truly are.

22.     On its website, True Religion advertises steep discounts on its Products. These discounts consistently offer "up to X%" off the listed regular prices that

Class Action Complaint                    4                    Case No. 2:25-cv-10909

Defendants advertise. True Religion also touts that its discounts are "Limited Time Only" or limited to specific time periods (such as Memorial Day). And it advertises these discounts extensively: including on attention-grabbing banners at the top of its homepage. Here are some of the banners that True Religion includes on its webpage:



23.    And here are some of the advertisements appearing beneath the banners on Defendants' homepage:



*Captured October 19, 2002*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Captured August 29, 2025*

*Captured July 1, 2023*

24. Defendants represent that these discounts will only be available for a limited time, but in reality, the discounted pricing continues indefinitely. For example, in early December 2023, Defendants represented that they were offering a sitewide "Up to 70% OFF" discount as part of their "Holiday Sale":

1
2
3
4
5
6
7
8
9



10

*Captured December 6, 2023*

11      25.      To reasonable consumers, this means that shortly after the holidays,

12  Defendants' Products will no longer be on sale and will retail at their purported

13  regular price. But Defendants' discount pricing does not end, and their purported

14  regular prices do not return. Instead, Defendants keeps offering the discount pricing

15  and simply change the name of the sale. For example, at the end of December,

16  Defendants replaced the "Holiday Sale" with their "Semi Annual Sale," but the

17  discounting remained:

18
19
20



21
22
23

*Captured December 30, 2023,*

24

*and again on January 15, 2024*

25
26
27
28

26.     Similarly, after the "Semi Annual Sale," Defendants' Products did not return to their regular list prices. Instead, they were still available at a discount, as part of the new replacement promotion: the "President's Day Sale" that also was purportedly offered for a "Limited Time Only":



*Captured February 20, 2024*

27.     Again, to reasonable consumers, this means that shortly after President's Day, Defendants' Products will no longer be on sale and will retail at their purported regular prices. But that is not how Defendants operate. Instead, after enough time had passed beyond "President's Day," Defendants stopped referring to the sale as a "President's Day" sale but continued offering the same sitewide discounting:



*Captured March 31, 2024*

28.    Using these tactics, Defendants lead reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

29.    To confirm that Defendants consistently offer discounts off purported regular prices that are applied to all orders, Plaintiff's counsel performed an investigation of Defendants' advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org) and screen captures from the www.truereligion.com website. That investigation confirms that Defendants' sales have persisted continuously. For example, the investigation randomly sampled 81 screenshots of Defendants' website from those available on the Wayback machine dating back to November 2021. Of the 81 screenshots, 74 (i.e., 91.4%) displayed a purportedly time-limited discount on Defendants' Products. In addition, beginning in late August 2025, the investigation captured screenshots on an almost daily basis directly from the www.truereligion.com website. Screenshots were captured for 53 days. Of these, all 53 (i.e. 100%) displayed a purportedly time-limited discount on Defendants' Products.

30.    Also, Google Shopping data (which shows the "typical" price for products over the prior three months) further confirms Defendants' deceptive pricing practice. Google pricing data was gathered for 25 True Religion Products on September 2, 2025 and for another 25 True Religion Products on September 11, 2025. For all 50 of the sampled True Religion Products (i.e., 100%), the data showed that the Product's "typical price" for the three preceding months was well below the Product's purported regular price listed on True Religion's website.

31.    Defendants also list the discount prices for their Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided on the following pages:



*Captured August 11, 2025[1]*

---

[1] The text appearing beneath each photo in this screenshot has been overlaid for ease of viewing.



*Captured October 7, 2025[2]*

---

[2] The text appearing beneath each photo in this screenshot has been overlaid for ease of viewing.

32.    Based on Defendants' advertisements, reasonable consumers reasonably believe that the prices displayed in "strikethrough font" (*e.g.*, "~~$184.00~~" for the Rocco Stacked Skinny Jean) are Defendants' regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendants' website before the limited-time offer went into effect).



*Captured October 1, 2025*

33.    In other words, reasonable consumers reasonably believe that the listed strikethrough regular prices Defendants advertise represent the amount that consumers formerly had to pay on Defendants' website for Defendants' goods, before the limited-time sale began. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendants on their website had to pay the regular price to get the item and did not have the opportunity to get a discount from the regular price.

34.    In addition, Defendants' website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts throughout the purchasing process, including on the Product pages, the Shopping Bag pages, and the Checkout pages.

35.     Each Product-specific page lists the Product with a fake regular price (appearing in strikethrough font) next to the purported discount price. For example, on August 15, 2025, the product page for the "Joey Low Rise Super T Flare Jean" listed a purported regular price of "$~~244.00~~" discounted "30% OFF" to "$170.80."



*Captured August 15, 2025*

36.     And, once a Product is selected, the Shopping Bag page repeats the same fake prices and fake discounts in substantially the same format. For example, after selecting the "Joey Low Rise Super T Flare Jean" for purchase on August 15, 2025, the Shopping Bag page appears like this:



*Captured August 15, 2025*

37.     And then the next step of the purchasing process, the Checkout page, also repeats the same fake prices and fake discounts in substantially the same format. For example:



*Captured August 15, 2025*

38.     But the truth is, the listed regular price (e.g., $244.00 for the "Joey Low Rise Super T Flare Jean") that appears on True Religion's website, including on its Product page, its Shopping Bag page, and its Checkout page, is not its regular price. Instead, the purported regular price is much lower, because Defendants almost always offer steep discounts on their Products. As a result, Defendants' customers did not receive the advertised discount (e.g., "30% Off"). They received a much lower discount, or no discount at all.

39.     Based on Defendants' advertisements, reasonable consumers reasonably believe that the list prices Defendants advertise are Defendants' regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendants' website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendants advertise represent the amount that consumers formerly had to pay on Defendants' website for Defendants' goods, before the sale began, and will again have to pay for Defendants'

goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendants on their website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

40.    Reasonable consumers also reasonably believe that the list prices Defendants advertise represent the true market values of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendants almost always offer discounts off the purported regular prices they advertise. As a result, everything about Defendants' price and purported discount advertising is false. The list prices Defendants advertise are not actually Defendants' regular or former prices, or the prevailing prices for the Products Defendants sell. And, the list prices do not represent the true market value for the Products, because Defendants' Products are consistently available for less than that on Defendants' website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendants advertise are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are regularly available.

**B.    Defendants' purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendants' advertisement of the purported discounts.**

41.    As explained above, Defendants sell True Religion Products through their website, www.truereligion.com. Some True Religion Products are also available through a small number of third-party websites and retailers, including Amazon, Tilly's, and Nordstrom Rack.

42.    These True Religion Products are consistently available from third-party websites and retailers for prices well below Defendants' listed regular prices. As an

illustrative example, on November 12, 2025, True Religion advertised its "Becca Crystal Wing Bootcut Jean" on its website, with a discounted price of $92.00 and a regular list price of $184.00:



*Captured November 12, 2025*

43.    On the same day, the same Product was available on Amazon for $92.00, which mirrors the purported discount price on True Religion's website and is far less than the purported regular price Defendants were advertising on True Religion's website:[3]



*Captured November 12, 2025*

_____

[3] On the same day, the product was also available at Tilly's for $103.20, which is far less than the purported regular price appearing on True Religion's website.

Class Action Complaint                16                Case No. 2:25-cv-10909

44.    Plus, a third-party Amazon price tracker, keepa.com, reveals that in the three months prior to November 12, 2025, the price of the Becca Crystal Wing Bootcut Jean on Amazon ranged between $110.00 and $55.00—nowhere near the purportedly regular price shown on Defendants' website:



*Captured November 12, 2025*

45.    And Google Shopping data (which shows the "typical" price for products over the prior three months based on stores across the Internet) shows that the same Product is typically sold by retailers across the web in the range of "$90 to $129," which again is far less than Defendants' advertised regular price of $184.00:



*Captured November 12, 2025*

46.     In short, consistent with the illustrative example above, True Religion's Products are regularly available from third-party websites and sellers for less than the purported regular prices that True Religion's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on True Religion's price, especially since the Products are sold in an e-commerce market and True Religion, the manufacturers, sells the Products directly to consumers through its publicly available website.

47.     Moreover, regardless of third-party websites' and retailers' prices, True Religion Products are primarily sold through True Religion's branded website, www.truereligion.com. If consumers are searching for a True Religion Product, they will go to True Religion's website. For example, if a consumer Googles "True Religion Jeans," the first sponsored and unsponsored results lead to www.truereligion.com. So, because the True Religion Products are most commonly sold on True Religion's website, they are most commonly sold for the discounted prices available on True Religion's website.

48.     Moreover, as discussed above, True Religion Products are regularly available on Amazon—one of the world's largest retailers of consumer goods—for far lower prices than Defendants' listed regular prices. Thus, between sales on Defendants' website and Amazon, the Products routinely and predominantly sell for prices below Defendants' purported regular prices, and the listed regular prices are not the prevailing market rates.

**C.     Defendants' advertisements are unfair, deceptive, and unlawful.**

49.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

50.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless

the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

51.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

52.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

53.    And finally, California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

54.    Here, as described in detail above, Defendants make untrue and misleading statements about their prices. Defendants advertise regular prices that are not their true regular prices, or their former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendants advertise goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendants make false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendants engage in unlawful, unfair, and deceptive business practices.

### D.    Defendants' advertisements harm consumers.

55.    Based on Defendants' advertisements, reasonable consumers expect that the list prices Defendants advertise are the regular prices at which Defendants usually sells their Products, that these are former prices that Defendants sold the True Religion Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

56.    Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

57.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

58.    Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[4] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[5]

59.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6]

---

[4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[6] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

60.    Thus, Defendants' false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendants' advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendants' advertisements artificially increase consumer demand for Defendants' Products. This puts upward pressure on the prices that Defendants can charge for their Products. As a result, Defendants can charge a price premium for their Products that they would not be able to charge absent the misrepresentations described above. So, due to Defendants' misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

**E.    Plaintiff was misled by Defendants' misrepresentations.**

61.    On July 25, 2025, Ms. Neil bought Products from Defendants' website, www.truereligion.com. At the time, True Religion listed the regular price, or strikethrough price, of the Vintage Logo Raglan Long Sleeve Top ("$~~59.97~~") alongside the discounted price ("$14.99"). True Religion also listed the regular price, or strikethrough price, of the Crystal Bling Ring Logo Baby Tee ("$~~54.97~~") alongside the discounted price ("$14.99"). True Religion also listed the regular price, or strikethrough price, of the Cargo Bootcut Jean ("$~~149.97~~") alongside the discounted price ("$59.99"). True Religion also listed the regular price, or strikethrough price, of the Distressed Logo Long Sleeve Baby Tee ("$~~59.97~~") alongside the discounted price ("$14.99"). True Religion also listed the regular price, or strikethrough price, of the Halle High Rise Big T Super Skinny Jean ("$~~174.98~~") alongside the discounted price ("$79.99"). True Religion also listed the regular price, or strikethrough price, of the Horseshoe Logo Rib Long Sleeve Baby Tee ("$~~59.97~~") alongside the discounted price ("$14.99"). True Religion also listed the regular price, or strikethrough price, of the Long Sleeve Logo Applique Baby Tee ("$~~59.97~~") alongside the discounted price ("$14.99"). Ms. Neil purchased each of the forgoing Products on July 25, 2025. Her order confirmation is reproduced on the following page:

Class Action Complaint                    21                    Case No. 2:25-cv-10909

**Here's what you ordered:**

| Item | Price |
|---|---|



**VINTAGE LOGO RAGLAN LONG SLEEVE TOP**
Sale Price:
$14.99 MD styles
**QTY: 1**
**Color: Winter Wht / Chocolate Lab**
**Size: L**
~~$59.97~~
$14.99



**CRYSTAL BLING RING LOGO BABY TEE**
Sale Price:
$14.99 MD styles
**QTY: 1**
**Color: White**
**Size: XL**
~~$54.97~~
$14.99



**CARGO BOOTCUT JEAN**
Sale Price:
$59.99 MD styles
**QTY: 1**
**Color: MEDIUM MELTING WASH**
**Size: 32**
~~$149.97~~
$59.99



**DISTRESSED LOGO LONG SLEEVE BABY TEE**
Sale Price:
$14.99 MD styles
**QTY: 1**
**Color: Black**
**Size: XS**
~~$59.97~~
$14.99



**HALLE HIGH RISE BIG T SUPER SKINNY JEAN**
Sale Price:
$79.99 MD styles
**QTY: 1**
**Color: Dark Rejuvenating Wash**
**Size: 32**
~~$174.98~~
$79.99



**HORSESHOE LOGO RIB LONG SLEEVE BABY TEE**
Sale Price:
$14.99 MD styles
**QTY: 1**
**Color: White**
**Size: XL**
~~$59.97~~
$14.99



**LONG SLEEVE LOGO APPLIQUE BABY TEE**
Sale Price:
$14.99 MD styles
**QTY: 1**
**Color: Winter White**
**Size: XL**
~~$59.97~~
$14.99

Payment method:                                     Subtotal: $214.93
APPLE PAY                                  Order Discount: $-32.24
                                                               Tax: $17.80
                                                        Shipping : $0.00

**TOTAL: $200.49**

62.     On August 28, 2025, Ms. Neil again bought Products from Defendants' website, www.truereligion.com. At the time, True Religion listed the regular price, or strikethrough price, of the Woven Crossbody Bag ("$~~69.97~~") alongside the discounted price ("$34.98"). True Religion also listed the regular price, or strikethrough price, of the Crystal Terry Track Jacket ("$~~104.97~~") alongside the discounted price ("$52.48"). True Religion also listed the regular price, or strikethrough price, of the Crystal Terry Bootcut Sweatpant ("$~~94.97~~") alongside the discounted price ("$47.48"). True Religion also listed the regular price, or strikethrough price, of the Heritage Burnout Baby Tee ("$~~39.97~~") alongside the discounted price ("$15.99"). Ms. Neil purchased each of these Products on August 28, 2025. Her order confirmation is reproduced below:



63.    Ms. Neil made her purchases from the True Religion website while living in Los Angeles, California. As shown above, when Ms. Neil made each of her purchases, Defendants were advertising a substantial and limited-time sale on their website. Prior to making her purchases, Ms. Neil reviewed Defendants' website and saw that Defendants were advertising these substantial, time-limited discounts. Ms. Neil read and relied on the representations (like those shown above) on Defendants' website, including that the Products had the regular prices listed on the website in strikethrough font, but were being offered at a discounted sale price from those regular prices, and that the sale was time-limited. Based on Defendants' representations described above, Plaintiff reasonably understood that Defendants usually (and formerly, before the promotion Defendants were advertising) sold the Products she was purchasing at the published regular prices (shown in strikethrough font), that these regular prices were the prevailing price and market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the promotion), and that the products would go back to retailing for the published regular prices when the promotion ended. She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she would not be receiving the advertised discounts.

64.    In reality, as explained above, True Religion Products, including the Products that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendants did not regularly sell the Products that Plaintiff purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendants' products are regularly on sale.

65.    Plaintiff faces an imminent threat of future harm. She would purchase additional True Religion Products in the future if she could feel sure that Defendants' regular prices accurately reflected Defendants' former prices and the market value of

the Products, and that their discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendants' regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendants' website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendants' advertising in the future, and so she cannot purchase the Products that she would like to purchase.

### F. Defendants breached their contracts with and warranties to Plaintiff and the putative Class.

66. When Plaintiff, and other members of the putative Class, purchased and paid for True Religion Products that they bought as described above, they accepted offers that Defendants made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

67. Defendants' advertisements, for example on their website, and in their price quotations, list the market value of the items that Defendants promised to provide (which, for Plaintiff, are detailed above). Defendants agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and the putative Class.

68. Defendants also warranted that the regular price and market value of the Products Plaintiff purchased were the advertised list prices and warranted that Plaintiff was receiving a specific discount on the Products.

69. The regular price and market value of the items Plaintiff and putative Class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract.

They were also affirmations of fact about the Products and a promise relating to the goods.

70.     Plaintiff and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

71.     True Religion breached its contract by failing to provide Plaintiff and other members of the putative Class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendants also breached warranties for the same reasons.

**G.    No adequate remedy at law.**

72.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

73.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

74.     In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendants' representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

75.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

76.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendants again in the future if she could feel sure that Defendants' regular prices accurately reflected Defendants' former prices and the market value of the Products, and that their discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendants' regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendants' advertising in the future, and so cannot purchase the True Religion Products she would like to purchase.

## V.    Class Action Allegations.

77.    Plaintiff brings the asserted claims on behalf of the proposed Class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more True Religion Products advertised at a discount on Defendants' website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more True Religion Products advertised at a discount on Defendants' website.

78.    The following people are excluded from the proposed Classes: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

79. The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class members.

80. Class members can be identified through Defendants' sales records and public notice.

### Predominance of Common Questions

81. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their advertisements;

(2) whether Defendants violated California's consumer protection statutes;

(3) whether Defendants committed a breach of contract;

(4) whether Defendants committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed Class.

### Typicality & Adequacy

82. Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased True Religion Products advertised at a discount. There are no conflicts of interest between Plaintiff and the Class.

### Superiority

83. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

1     **VI.**    **Claims.**

2                    <u>**First Cause of Action**</u>:

3    **Violation of California's False Advertising Law Bus. & Prof. Code §§**

4                   **17500 & 17501 et seq.**

5             **(By Plaintiff and the California Subclass)**

6       84.    Plaintiff incorporates each and every factual allegation set forth above.

7       85.    Plaintiff brings this cause of action on behalf of herself and members of

8 the California Subclass.

9       86.    Defendants have violated sections 17500 and 17501 of the Business and

10 Professions Code.

11       87.    Defendants have violated, and continues to violate, section 17500 of the

12 Business and Professions Code by disseminating untrue and misleading

13 advertisements to Plaintiff and Class members.

14       88.    As alleged more fully above, Defendants advertise former prices along

15 with discounts. Defendants do this, for example, by crossing out a higher price (*e.g.*,

16 ~~$109.95~~) and displaying it next to a lower, discounted price. Reasonable consumers

17 would understand prices advertised in strikethrough font from which time-limited

18 discounts are calculated to denote "former" prices (i.e., the prices that Defendants

19 charged before the time-limited discount went into effect.).

20       89.    The prices advertised by Defendants are not Defendants' regular prices.

21 Those prices are not Defendants' regular prices (i.e., the price you usually have to pay

22 to get the Product in question), because there is consistently a heavily-advertised

23 promotion ongoing entitling consumers to a discount. Moreover, for the same reasons,

24 those prices were not the former prices of the Products. Accordingly, Defendants'

25 statements about the former prices of their Products, and their statements about their

26 discounts from those former prices, were untrue and misleading. In addition,

27 Defendants' statements that their discounts are limited in time (such as representations

28 that a sale is time-limited or will end on a specific date) are false and misleading too.

90. In addition, Defendants have violated, and continue to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendants' advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendants' former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendants' advertisements do not indicate whether or when the purported former prices were offered at all.

91. Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing True Religion Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchasing decision.

92. In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.).

93. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

94. Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

95. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution

in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendants' unlawful conduct.

## Second Cause of Action:

### Violation of California's Consumer Legal Remedies Act
### (By Plaintiff and the California Subclass)

96.    Plaintiff incorporates each and every factual allegation set forth above.

97.    Plaintiff brings this cause of action on behalf of themselves and members of the California Subclass.

98.    Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

99.    Plaintiff and the California Subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

100.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

101.    As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in their advertisements to Class members. Defendants did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

102.    Defendants violated, and continue to violate, section 1770 of the California Civil Code.

103.    Defendants violated, and continue to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendants represent that the value of their Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

104.    Defendants violated, and continue to violate, section 1770(a)(9) of the California Civil Code. Defendants violate this by advertising their Products as being offered at a discount, when in fact Defendants do not intend to sell the Products at a discount.

105.    And Defendants violated, and continue to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Anniversary Sale" when in fact Defendants have ongoing sales).

106.    Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

107.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing True Religion Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchasing decision.

108.    In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.

109.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

110.    Plaintiff and the California Subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were

promised, and received Products with market values lower than the promised market values.

111.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

112.    CLRA § 1782 NOTICE. On October 30, 2025, a CLRA demand letter on behalf of Ms. Neil was sent to Defendants' California headquarters via certified mail (return receipt requested). The letter provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendants do not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the California Class will seek all monetary relief allowed under the CLRA.

113.    The CLRA venue declaration is attached.

**Third Cause of Action:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Subclass)**

114.    Plaintiff incorporates each and every factual allegation set forth above.

115.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

116.    Defendants have violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

117.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendants engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC §

52(a). As the FTC's regulations make clear, Defendants' false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, 16 C.F.R. § 233.2.

### The Deceptive Prong

118.   As alleged in detail above, Defendants' representations that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

119.   Defendants' representations were misleading to Plaintiff and other reasonable consumers.

120.   Plaintiff relied upon Defendants' misleading representations and omissions, as detailed above.

### The Unfair Prong

121.   As alleged in detail above, Defendants committed "unfair" acts by falsely advertising that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

122.   Defendants violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

123.   The harm to Plaintiff and the California Subclass greatly outweighs the public utility of Defendants' conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

124.   Plaintiff and the California Subclass could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceptive to reasonable consumers like Plaintiff.

125. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

126. For all prongs, Defendants' representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing True Religion Products. Defendants' representations were a substantial factor in Plaintiff's purchasing decision.

127. In addition, class-wide reliance can be inferred because Defendants' representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.).

128. Defendants' representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass members.

129. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

130. For the claims under California's Unfair Competition Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendants' unlawful conduct.

### Fourth Cause of Action:

### Breach of Contract

### (By Plaintiff and the Nationwide Class)

131. Plaintiff incorporates each and every factual allegation set forth above.

132.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

133.    Plaintiff and Class members entered into contracts with True Religion when they placed orders to purchase Products.

134.    The contracts provided that Plaintiff and Class members would pay True Religion for the Products ordered.

135.    The contracts further required that True Religion provide Plaintiff and class members with Products that have a market value equal to the advertised list prices. They also required that True Religion provide Plaintiff and the Class members with the discount advertised. These were specific and material terms of the contract.

136.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

137.    Plaintiff and Class members paid True Religion for the Products they ordered, and satisfied all other conditions of their contracts.

138.    True Religion breached the contracts with Plaintiff and Class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. True Religion did not provide the discount that True Religion had promised.

139.    Plaintiff provided Defendants with notice of this breach, by mailing notice letters to Defendants' registered agent and California headquarters on October 30, 2025.

140.    As a direct and proximate result of Defendants' breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

141.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium

charged to Plaintiff and the other Class members as a result of Defendants' unlawful conduct.

### Fifth Cause of Action:

**Breach of Express Warranty**

**(By Plaintiff and the Nationwide Class)**

142.   Plaintiff incorporates each and every factual allegation set forth above.

143.   Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

144.   True Religion, as the manufacturer, marketer, distributor, supplier, and/or seller of True Religion Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

145.   This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

146.   In fact, True Religion Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

147.   Plaintiff provided Defendants with notice of this breach of warranty, by mailing notice letters to Defendants' registered agent and California headquarters on October 30, 2025.

148.   Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

149.   For her breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other Class members as a result of Defendants' unlawful conduct.

## Sixth Cause of Action:
### Quasi-Contract/Unjust Enrichment
### (By Plaintiff and the Nationwide Class)

150.   Plaintiff incorporates paragraphs 1-65, 72-83.

151.   Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Nationwide Class and alternatively on behalf of herself and the California Subclass.

152.   As alleged in detail above, Defendants' false and misleading advertising caused Plaintiff and the Class to purchase True Religion Products and to pay a price premium for these Products.

153.   In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

154.   (In the alternative only), due to Defendants' misrepresentations, their contracts with Plaintiff and other Class members are void or voidable.

155.   Plaintiff and the Class seek restitution, and in the alternative, rescission.

156.   For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendants' unlawful conduct.

## Seventh Cause of Action:
### Negligent Misrepresentation
### (By Plaintiff and the California Subclass)

157.   Plaintiff incorporates each and every factual allegation set forth above.

158.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

159.   As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

160.   These representations were false.

161.   When Defendants made these misrepresentations, they knew or should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true when made.

162.   Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

163.   In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.

164.   Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

165.   Plaintiff and the California Subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

166.   For the negligent misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendants' unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiff and the California Subclass)**

167.   Plaintiff incorporates each and every factual allegation set forth above.

168.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

169.   As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

170.   These representations were false.

171.   When Defendants made these misrepresentations, they knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

172.   Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

173.   In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy True Religion Products.

174.   Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

175.   Plaintiff and the California Subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

176.   For the intentional misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured

by the price premium charged to Plaintiff and the California Subclass as a result of Defendants' unlawful conduct.

**VII.  Relief.**

177.   Plaintiff seeks the following relief for herself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**<u>Demand For Jury Trial</u>**

178.   Plaintiff demands the right to a jury trial on all claims so triable.

Dated: November 13, 2025                              Respectfully submitted,

By: */s/ Rick Lyon*

Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*